



| | |
|---|---|
| JPD/CNC<br>F.#2010R01603 | *United States Attorney's Office*<br>*610 Federal Plaza*<br>*Central Islip, New York 11722-4454* |

February 21, 2011

**BY ECF & HAND DELIVERY**

The Honorable Joanna Seybert
United States District Judge
Eastern District of New York
1034 Federal Plaza
Central Islip, New York 11722

      Re:  United States v. Dominick Curatola, <u>et al</u>.
            <u>Criminal Docket No. 10-991(S-1)(JS)</u>

Dear Judge Seybert:

      At the arraignment of defendants Gregory Ballin, Michael Bradley, Joseph Campo, Eric Preimer, Brian Sullivan and _____, on the Superseding Indictment on February 11, 2011, the government requested that this case be designated as complex, given the number of defendants, the nature of the charges and the voluminous discovery.  The government renewed its request on February 18, 2011, at the arraignment of defendants Dominic Curatola, Michael Decresenzo, German Chajchic and Kerry Iasparra. At the Court's request, the government hereby moves the Court, in writing, to designate this prosecution as a complex case pursuant to 18 U.S.C. § 3161(h)(7)(B)(ii).  Furthermore, because the designation of a case as complex does not extinguish the requirement that courts exclude specific time periods under the Speedy Trial Act, the government requests that the Court grant an ends-of-justice continuance, excluding time from the upcoming status conference on March 4, 2011 through the date of the next status conference scheduled by the Court, for the reasons set forth below.

      <u>The Current Superseding (S-1) Indictment</u>

      Currently, there are twelve (12) defendants charged in the above-captioned Superseding Indictment.[1]  The charges against

---

      [1] The Superseding (S-1) Indictment, which added eight (8) defendants and thirteen charges, was returned on February 3,

the twelve defendants include: Conspiracy to Distribute
Marijuana; Distribution and Possession of Marijuana with Intent
to Distribute; Conspiracy to Import Marijuana; and Importation of
Marijuana. Count One of the Superseding Indictment, which
charges Conspiracy to Distribute Marijuana, covers a time period
from March 2010 to November 16, 2010.

## Complex Cases Under the Speedy Trial Act

Pursuant to 18 U.S.C. §§ 3161(h)(7)(A) and (B)(ii),
courts may exclude time to serve the ends of justice when a case
is "so unusual or so complex, due to the number of defendants,
the nature of the prosecution, or the existence of novel
questions of fact or law, that it is unreasonable to expect
adequate preparation for pretrial proceedings or for the trial
itself within the time limits established by this section." The
Second Circuit has noted that "the length of an exclusion under
§ 3161(h)(8) for a 'complex' case, 18 U.S.C. § 3161(h)(8)(B)(ii),
should reasonably be related to the actual needs of the case, and
should not be used either as a calendar control device or as a
means of circumventing the requirements of the Speedy Trial Act."
United States v. LoFranco, 818 F.2d 276, 277 (2d Cir. 1987).
Thus, the designation of a case as complex does not permit "a
boundless exclusion of time." Id.[2]

Additionally, 18 U.S.C. § 3161(h)(7)(A) requires a
trial court to "set[] forth, in the record of the case, either
orally or in writing, its reasons for finding that the ends of
justice served by the granting of such [a] continuance outweigh
the best interests of the public and the defendant in a speedy
trial." The Second Circuit has held that a trial court's
"decision to grant an ends-of-justice continuance [must] be
prospective, not retroactive; an order granting a continuance on
that ground must be made at the outset of the excludable period."
United States v. Tunnessen, 763 F.2d 74, 77 (2d Cir. 1985).
Finally, "time may not be excluded based on the ends-of-justice
unless the district court indicates at the time it grants the
continuance that it is doing so upon a balancing of the factors
specified by section 3161(h)(8) . . . where possible a court
should make the findings required by 3161(h)(8)(A) at the time it
grants the continuance." Id. at 78-79 (quotation marks and
citation omitted).

---

2011.

[2] In 2008, Congress amended the Speedy Trial Act and, as
part of those amendments, § 3161(h)(8) became § 3161(h)(7).

## An Ends-Of-Justice Continuance Is Warranted

The fact that there are twelve defendants in this case, standing alone, weighs heavily in favor of a complex case designation. See United States v. Hernandez, 862 F.2d 17, 24 (2d Cir. 1988) ("It was hardly an abuse of discretion to hold a nineteen-defendant case to be complex."); United States v. Claudio, 806 F.2d 334, 341 (2d Cir. 1986) ("Inevitably, a case involving twenty defendants and activities occurring over an extended period of time in widely separated locations will require more than the normal period of time for trial preparation by both the prosecution and the defense. See 18 U.S.C. § 3161(h)(8)(B)(ii) (number of defendants and nature of prosecution pertinent in determining if case is so complex as to justify 'ends of justice' continuance under section 3161(h)(8)(A)).").

This case is based, to a considerable degree, on communications intercepted pursuant to court-authorized wiretaps over seventeen different telephones (the "Subject Telephones") over an eight-month time period. As will be described in more detail below, criminal activity involving the co-defendants occurred in multiple locations in furtherance of the conspiracy.

Given the number of defendants, number of telephones, numbers of intercepted communications, and number of locations in which criminal activity occurred, the discovery in this case will be voluminous. A voluminous amount of evidence has consistently been a factor in judicial determinations over whether a § 18 U.S.C. § 3161(h)(7)(B)(ii) continuance is appropriate. See United States v. Beech-Nut Nutrition Corp., 871 F.2d 1181, 1197 (2d Cir. 1989)(upholding a continuance that was partially based on the fact that the prosecution needed to sort through thousands of corporate documents); United States v. Upton, 1995 WL 264168, *2 (E.D.N.Y. 1995) (granting continuance in a case that involved "six file cabinets of discovery material"). Indeed, almost every occasion within the Second Circuit where a district court granted a continuance on complexity grounds involved, at least in part, burdensome compilation or preparation of discovery materials. See Beech-Nut, 871 F.2d at 1197 (noting that a court may consider the volume of documents and physical evidence in deciding whether a case is complex); United States v. Astra Motor Cars, 352 F. Supp. 2d 367, 369 (E.D.N.Y. 2005) (stating that "the extraordinary volume of discovery" greatly contributed to the case's designation as complex).

In the instant case, relevant to the charges contained in the Superseding Indictment, there were nineteen different

Orders from Justices with the Supreme Court of the State of New York, Appellate Division, Second Judicial Department, which were issued pertaining to the use of court-authorized eavesdropping on the Subject Telephones during the time period of March 17, 2010 through February 10, 2011 (two of those orders concerned issues after interceptions of communications ceased on November 18, 2010). There were Applications and/or Affidavits containing sworn statements of fact made in support of those Orders. There are approximately thirteen hundred pages of Orders, Applications and Affidavits pertaining to court-authorized eavesdropping in this investigation relevant to the charges contained in the Superseding Indictment. During the course of eight months of court-authorized eavesdropping in this investigation, there were thousands of conversations and text messages intercepted on the Subject Telephones.

Prior to the next status conference date on March 4, 2011, the government will provide to the defense the eavesdropping warrants and supporting applications and affidavits concerning the interception of communications over the Subject Telephones. In addition, prior to the next status conference date, the government expects to provide to the defense copies of the line sheets (summaries of the intercepted conversations), text messages, and audio of the conversations intercepted using court-authorized eavesdropping.

Based on the voluminous discovery at issue in this case, the government asks this Court to find that "it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established" by the Speedy Trial Act. 18 U.S.C. § 3161(h)(7)(B)(ii). While the government anticipates that it will have provided the defendants with a significant amount of the discovery in this case by March 4, 2011, the government expects to produce additional discovery in the coming weeks.

In addition to the communications intercepted pursuant to court-authorized eavesdropping, the trial of the charges contained in the Superseding Indictment will involve numerous observations of conduct by the defendants that is consistent with marijuana trafficking, as well as seizures of marijuana, records, and other physical evidence obtained that the government submits will establish the guilt of the defendants for the crimes charged.

Furthermore, the evidence against the defendants is interrelated, with conversations and text messages intercepted between co-defendants being relevant to establish the conduct of their co-conspirators. For example, the intercepted conversations established that defendant Chajchic brokered the arrangement whereby Curatola was to import marijuana from "David" in Canada. However, in the week leading up to the August 10, 2010 marijuana delivery, the person believed to be "David" told Curatola that there was a delay in getting the shipment of marijuana to Curatola. This resulted in a series of communications being intercepted on August 5, 2010, in which Curatola expressed his displeasure to Chajchic about the delay of getting the product to him.

For instance, on August 5, 2010 at 8:42 p.m., law enforcement officers intercepted a conversation between Curatola and Chajchic in which Curatola complained to Chajchic that he (Curatola) was "in a spot," that he borrowed money to pay for the shipment, and that he was upset that the person believed to be "David" had misrepresented how soon he would be able to send a shipment. Minutes before the conversation between Curatola and Chajchic, we intercepted two outgoing text messages sent from Curatola to defendant Brian Sullivan, in which Curatola asked Sullivan ". . . ask him (Sullivan's supplier) what kind of routine he can do on 40 sets . . . my other trainers dickin around."

In a conversation intercepted at 6:47 p.m. on August 5, 2010, Curatola asked a marijuana supplier who used telephone (516) 468-5517 what price he would charge Curatola for "forty C.O.D," of "Jack." Curatola further stated to the marijuana supplier that he had been waiting for delivery of a shipment, which was delayed, and was "looking like a fool" to a customer who wanted a supply. Thus, when taken in context with the other interceptions, Curatola's text message to Sullivan about "40 sets" and a trainer who was "dickin around," was, in fact, an inquiry to Sullivan regarding whether Sullivan's supplier could provide forty pounds of marijuana to Curatola due to the delay which Curatola was experiencing from "David."

On August 11, 2010, the day after Curatola received the one hundred pounds of marijuana from "David," Curatola sent a text message to Sullivan, in which Curatola stated: "Does r friend want to see our routine its better workout than I thought just looked tell him 30 sets I'm tellin u hell . . . ." Based on their training and experience and knowledge of this investigation, law enforcement officers believe that Curatola was offering Sullivan's marijuana customer thirty pounds of marijuana

from the Canadian shipment.

On August 12, 2010, when Curatola was making arrangements to pay "David's" money courier for the marijuana imported two days earlier, Curatola received assistance from co-defendant Decresenzo, who, in a conversation intercepted on August 12, 2010 at 12:55 p.m., accurately described to Curatola the presence of DEA surveillance vehicles that were following them at that time. This prompted Curatola to send a text message to Decresenzo at 1:12 p.m. on August 12, 2010, stating: "Let's clean the other house asap." These are only a couple of examples of how the evidence against the charged defendants is interrelated.

Second Circuit case law is clear that in cases involving multiple defendants, there is only one speedy trial clock, which begins on the date of the commencement of the speedy trial clock of the most recently added defendant. See United States v. Piteo, 726 F.2d 50, 52 (2d Cir. 1983). So long as any delay from the 70-day speedy trial clock is "reasonable," there is no violation of the Speedy Trial Act. Id. In Piteo, the Second Circuit explained that "this interpretation is completely consistent with the legislative history of the Speedy Trial Act, which indicates that the purpose of [18 U.S.C. § 3161(h)(7)] is to make sure that [the Act] does not alter the present rules of severance of defendants by forcing the government to prosecute the first defendant separately or be subject to a speedy trial dismissal motion." Id.

Thus, for all of the reasons stated above, including the volume of both evidence and discovery in this case, and the relevance of the evidence obtained in the investigation to the trial of all the co-defendants charged in the Superseding Indictment, the government respectfully requests that the Court designate this as a complex case pursuant to 18 U.S.C. § 3161(h)(7)(B)(ii). The government further requests that, pursuant to § 3161(h)(7)(A), the Court grant an ends-of-justice

continuance from March 4, 2011 to the date of the next status
conference scheduled by the Court.

                              Respectfully submitted,

                              LORETTA E. LYNCH
                              United States Attorney

                    By:  /S/Carrie N. Capwell
                         Carrie N. Capwell
                         Joseph P. Dompkowski (SAUSA)
                         Assistant U.S. Attorney
                         (631) 715-7836

cc: Defense Counsel of Record (By ECF)